**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3096-19

SABRINA PAGAN and
MARIA OLIVARES,

     Plaintiffs-Respondents,

v.

EDUARDO RIVERA,

     Defendant-Appellant.

_____

Argued March 3, 2021 – Decided March 29, 2021

Before Judges Alvarez and Geiger.

On appeal before the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4810-19.

Ruby Kumar-Thompson argued the cause for appellant (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Ruby Kumar-Thompson, on the briefs).

Jeffrey A. Bronster argued the cause for respondents.

PER CURIAM

Defendant Eduardo Rivera appeals from a February 14, 2020 order granting plaintiffs Sabrina Pagan and Maria Olivares' motion for leave to file a late notice of tort claim. For the following reasons, we vacate the order.

We derive the following facts from the record. On February 4, 2019, plaintiffs filed a five-count complaint against defendants Edwin Perez, Michael Kelly, and John Does in the Superior Court (Docket No. HUD-L-501-19). Perez is an officer in the Jersey City Police Department and was sued in both his individual and official capacity. Kelly is the Chief of the Jersey City Police Department and was sued only in his official capacity.

The complaint stated that plaintiffs filed a timely notice of tort claim on June 18, 2018. The notice of tort claim was served on Kelly and the Jersey City municipal clerk. It named Perez as the responding officer and the Jersey City Police Department as the responsible governmental entity.

The complaint alleged that "Pagan had obtained an Order of Protection against [her] former boyfriend, Brian Miller, as a result of his physical violence against her." "Thereafter, Miller engaged in a course of harassing conduct against Pagan, including sending her threatening texts." On May 13, 2018, Pagan received a threatening telephone call from Miller. "[T]hreatening texts

from Miller indicated that he was watching her from nearby, and might[,] in fact[,] be inside her building, which he had broken into in the past."

Pagan and Olivares drove to the police station to explain these events and their fear that Miller was inside the house. Pagan was advised that a police car would be sent "to her house and instructed her to wait for the police car outside the house." Perez eventually arrived alone and spoke to plaintiffs. Plaintiffs explained the situation in detail to Perez, including Miller's prior violence, the fact he had previously broken into Pagan's home, and the threatening texts he sent to Pagan that morning. Pagan also showed Perez the texts.

While Pagan was speaking to Perez, she received a text from Miller stating he knew she had called the police. Pagan showed the text to Perez. "Perez instructed Pagan to go into her apartment and to retrieve a copy of the Order of Protection so that he could see it." Pagan protested, "expressing to Perez her fear that Miller was hiding inside." Perez directed Pagan to retrieve the order from inside her residence while he remained in the police car. Pagan retrieved the order without incident.

Perez then told Pagan "he also needed to see her identification, and instructed her to go back into the apartment again to retrieve it." Pagan again protested because of her fear that Miller was hiding inside or on the building's

roof. Ignoring her protests, Perez "again ordered Pagan to retrieve her identification, [while] he remained in his police car." Pagan reentered the building, where she was confronted by Miller on the second floor. "Miller violently assaulted Pagan, ultimately throwing her down a flight of stairs." Despite Pagan's screams, Perez remained in his police car. Olivares warned Perez but ran into the building to help Pagan after "[s]eeing that Perez was not leaving the police car to help" Pagan. Miller assaulted Olivares, kicking her down the stairs. Pagan and Olivares each allege that they suffered physical injury and emotional distress as a result of the incident.

Miller fled the scene and was not apprehended until several weeks later. Miller subsequently pled guilty to assaulting Pagan and was sentenced to a prison term.

The complaint sought relief under: 18 U.S.C. § 1983 (count one); the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2, for violation of substantive due process under a created-danger theory (count two); and the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, for intentional infliction of emotional distress (count three), negligent infliction of emotional distress (count four), and negligence (count five).

On February 27, 2019, defendants removed the case to federal court pursuant to 28 U.S.C. § 1441. Plaintiffs subsequently learned that the responding police officer was Eduardo Rivera, not Perez, and filed an amended complaint in federal court naming Rivera as a defendant in place of Perez. Rivera was served with process on August 2, 2019.

Rivera moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted under a "state-created danger" theory and for failure to provide the pre-suit notice of tort claim required by the TCA. In response to the motion, on November 13, 2019, plaintiffs served a notice of tort claim naming Rivera and three days later moved for leave to file a late tort claim notice in Superior Court. Plaintiffs asserted they confused Rivera with Perez, who had subsequently assisted in Miller's arrest. Although the motion was filed beyond the one-year limit imposed by N.J.S.A. 59:8-9, plaintiffs claimed their motion was timely due to the tolling effect of the discovery rule. They also contended that there was no prejudice to defendants because the police department had been put on notice of the claims and the department was in the best position to know that plaintiffs had misidentified the officer.

In their opposition, defendants argued that the Superior Court lacked jurisdiction due to the removal of the case to federal court and that the court

should have denied the motion pursuant to <u>Rule</u> 4:5-1(b), <u>Rule</u> 4:30A, and principles of comity.  Both parties requested oral argument.

On February 14, 2020, the Superior Court judge granted the motion without oral argument.  The judge found that "[t]he name of the officer involved is more of a clerical error than anything that is material or that creates prejudice especially in light of the [parallel] action in federal court."  The judge did not address defendants' opposing arguments in her decision even though she acknowledged the parallel action in federal court.

The federal judge denied both aspects of Rivera's motion to dismiss. Pertinent to this appeal, the federal judge explained that the order granting leave to file the late tort claim notice was dispositive because the decision was made by a "judge of the Superior Court" in accordance with N.J.S.A. 59:8-9.  This appeal followed.

Defendant raises the following points for our consideration:

> I.  THE LAW DIVISION ABUSED ITS DISCRETION BY GRANTING MOVANTS' MOTION TO FILE A LATE NOTICE OF CLAIM AGAINST OFFICER RIVERA DUE TO THE LACK OF EVIDENCE OF EXTRAORDINARY CIRCUMSTANCES TO EXCUSE THE LATE NOTICE.
>
> II.  THE DISCOVERY RULE DOES NOT TOLL THE ACCRUAL OF MOVANTS' STATE LAW CLAIMS OR SAVE THEM FROM DISMISSAL DUE TO

THEIR FAILURE TO FILE A TORT CLAIMS NOTICE LESS THAN [NINETY] DAYS AFTER THE ALLEGED DISCOVERY.

III. APART FROM A LACK OF ANY EXTRAORDINARY CIRCUMSTANCES DEMONSTRATED BY MOVANTS, SUBSTANTIAL PREJUDICE EXISTS TO PRECLUDE GRANTING MOVANTS' MOTION TO FILE A LATE NOTICE OF CLAIM.

IV. THE SUPERIOR COURT WAS DIVESTED OF JURISDICTION OVER MOVANTS' STATE LAW CLAIMS AND SHOULD HAVE ABSTAINED FROM DECIDING ANY ISSUE THAT WOULD IMPACT UPON THE VALIDITY OF MOVANTS' STATE LAW CLAIMS OVER WHICH THE FEDERAL COURT HAS SUPPLEMENTAL AND CONCURRENT JURISDICTION.

We begin our analysis by noting the court erred by deciding the motion without hearing oral argument. Plaintiffs and defendants requested oral argument. Because this was not a routine discovery motion, each party had the right to oral argument. R. 1:6-2(d); see Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 1:6-2(d) (2021).

Second, the judge did not make findings of fact or provide conclusions of law regarding whether plaintiffs met their burden of demonstrating "sufficient reasons constituting extraordinary circumstances for [their] failure to file [a

timely] notice of claim" under N.J.S.A. 59:8-9.  This clearly violated Rule 1:7-4(a).

More fundamentally, the Superior Court lacked subject matter jurisdiction over the motion because the case had been removed to federal court.  Upon notice of the removal of the case to federal court, "the State court shall proceed no further unless and until the case is remanded."  28 U.S.C. § 1446(d).  See also Jatczyszyn v. Marcal Paper Mills, Inc., 422 N.J. Super. 123, 134 (App. Div. 2011) (same).  Here, the federal court exercised subject matter jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367(a).

Put simply, the Superior Court lacked subject matter jurisdiction over the motion because the case was removed to federal court and remained there.  "The absence of subject matter jurisdiction . . . cannot be waived; it may be asserted at any other time, even on appeal."  Triffin v. Se. Pa. Transp. Auth., 462 N.J. Super. 172, 178 (App. Div. 2020).  See also Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div. 2000) (noting that lack of subject matter jurisdiction is not waived even if not raised in the trial court); Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:6-2 (2021) (same).

Moreover, "a court cannot hear a case as to which it lacks subject matter jurisdiction even though all parties thereto desire an adjudication on the merits." Murray v. Comcast Corp., 457 N.J. Super. 464, 470 (App. Div. 2019) (quoting Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 65 (1978)). "Whether presiding over a case or deciding an appeal, judges have an independent, non-delegable duty to raise and determine whether the court has subject matter jurisdiction over the case whenever there is a reasonable basis to do so." Ibid. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the matter except as provided by [Rule] 1:13-4." R. 4:6-7.

In addition, the motion was filed under a different docket number—not the same docket number of the complaint originally filed in the Superior Court. As such, the first-filed rule applies because the district court obtained possession of the controversy before the motion was filed, Riggs v. Johnson Cty., 73 U.S. 166, 196 (1867), and is "capable of affording adequate relief and doing complete justice," Sensient Colors, Inc. v. Allstate Ins. Co., 193 N.J. 373, 387 (2008) (quoting O'Loughlin v. O'Loughlin, 6 N.J. 170, 179 (1951)). See also Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324 (1978) (stating that the "proper course under comity principles is not to exercise jurisdiction but to adhere to the general

rule that the court which first acquires jurisdiction has precedence in the absence of special equities").  No such special equities are present here.

Plaintiffs contend that only a judge of the Superior Court can grant leave to file a late notice of tort claim.  They rely on N.J.S.A. 59:8-9, which states that a claimant "may, in the discretion of a judge of the Superior Court, be permitted to file" a late notice of tort claim.  We disagree.  Federal courts routinely decide motions for leave to file a late notice of claim under the TCA.  See, e.g., Rolax v. Whitman, 175 F. Supp. 2d 720, 731 (D.N.J. 2001), aff'd, 53 F. App'x 635 (3d Cir. 2002); Forcella v. City of Ocean City, 70 F. Supp. 2d 512, 521 (D.N.J. 1999).

Because the Superior Court lacked subject matter jurisdiction and should not have decided the motion under principles of comity, the order granting the motion must be vacated.  Consequently, we do not reach the issues raised by defendants in Points I through III.

The order granting leave to file a late notice of tort claim is vacated.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3096-19